UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DEBORAH CHIEPPA,                :
     Plaintiff,                :
                             :
v.                            :     No. 3:14CV1767 (DJS)
                             :
WILLIAM W. BACKUS HOSPITAL,  :
     Defendant.            :

## MEMORANDUM OF DECISION

The plaintiff, Deborah Chieppa ("Chieppa"), alleges that her former employer, William W. Backus Hospital ("Backus"), terminated her employment on the basis of her age, race, color, and sex in violation of the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964 ("Title VII") . Backus has filed a motion pursuant to Fed. R. Civ. P. 56 seeking summary judgment as to all claims made against it. For the reasons stated below, the defendant's motion for summary judgment is granted.

## I.  FACTS

The Rules of the United States District Court for the District of Connecticut contain specific requirements pertaining to papers filed in support of, and in opposition to, a motion for summary judgment. The moving party must file a "'Local Rule 56(a)1 Statement,' which sets forth in separately numbered paragraphs . . . a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." L. Civ. R. 56(a)1. In turn, a party opposing a motion for summary judgment must file a "'Local Rule 56(a)2 Statement,' which states in separately numbered paragraphs . . . corresponding to the paragraphs contained in the moving party's Local Rule 56(a)1 Statement whether each of the facts asserted by the moving party is admitted or denied." L. Civ. R. 56(a)2. Each material fact included in a moving party's

Local Rule 56(a)1 Statement and each statement of material fact and denial of a fact included in an opponent's Local Rule 56(a)2 Statement "must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial. . . . The 'specific citation' obligation of this Local Rule requires counsel and pro se parties to cite to specific paragraphs when citing to affidavits . . . and to cite to specific pages when citing to deposition or other transcripts or to documents longer than a single page in length." L. Civ. R. 56(a)3.

Chieppa's papers filed in opposition to the defendant's motion for summary judgment include a document designated as "Plaintiff's Response to Defendant's Local Civil Rule 56(a)1 Amended Statement of Undisputed Material Facts."[1] (Doc. # 32). Although Chieppa's response denies certain of the statements of material fact included in Backus's Local Rule 56(a)1 Statement, none of her denials is "followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." L. Civ. R. 56(a)3. Chieppa's response includes a section designated as "Genuine Issues of Material Fact as to Which Plaintiff Contends Must be Tried." (Doc. # 32, at 4-8). As is the case with her denials of certain of the material facts stated by Backus, none of Chieppa's "genuine issues of material fact" cite to any evidence in support of those facts.

"[F]ailure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming certain facts that are supported by the evidence admitted . . . or in the Court imposing sanctions . . . ." L. Civ. R. 56 (a)3. Chieppa has failed to provide the

---

[1]Backus filed an amended Local Rule 56(a)1 Statement to include exhibits that had not been filed with its original Statement.

-2-

specific citations to evidence in the record required by Local Rule 56(a). While the Court declines to impose sanctions at this time on the basis of that failure, the Court will deem the defendant's factual assertions admitted to the extent they are properly supported by the record evidence and not rebutted by admissible evidence provided by the plaintiff.[2]

Backus is a 213 bed not-for-profit acute care hospital located in Norwich, Connecticut. The largest department in Backus is the Patient Care Services Division, which is often referred to as the Nursing Department. Backus has a Code of Conduct ("Code") outlining expectations for employee conduct. The Code includes a provision that patients are to be "treated in a manner that preserves their dignity, autonomy, self-esteem, civil rights, and involvement in their own care." (Doc. # 27-2, at 170). Employees are encouraged to report Code violations to management, Human Resources, administration, or Backus's Compliance helpline. Each Backus employee is expected "at all times to rely upon his or her good judgment and to follow all legal requirements." (*Id.* at 169). The failure to comply with the Code is considered "serious misconduct, which could result in termination on the first offense." (*Id.*).

Backus hired Chieppa as a Registered Nurse ("RN") in its Intravenous Therapy Department ("IV Therapy Department"), which is part of the Patient Care Services Division, in 1989. For approximately twenty-three years, Chieppa reported to Virginia Mabesoone ("Mabesoone"), who was a Regional Nurse Manager. For a period of time, Chieppa also reported to Lyndsay Atwater ("Atwater"), a Clinical Coordinator, while still reporting to Mabesoone. In or

---

[2]The Court notes that the plaintiff's opposition papers include an "Affidavit of Deborah Chieppa in Response to Affidavit of Lisa Bazinet." (Doc. # 33). To the extent this affidavit properly responds to the defendant's Local Rule 56(a)1 Statement, the Court has taken this document into consideration in determining the facts for purposes of the motion for summary judgment.

about 2012, as Mabesoone transitioned to retirement, Chieppa began reporting to Lisa Bazinet

("Bazinet"), the IV Therapy Department Supervisor.

As an IV therapy nurse, Chieppa was responsible for following Backus policy and

protocol for IV therapy, including following physician orders. Chieppa's duties included

performing venipuncture[3] for the initiation of administration of prescribed fluids and

medications. Backus policies governing proper IV therapy include a requirement that an RN

attempt to obtain IV insertion twice before calling a second IV therapist who is then to attempt

IV insertion a third time. If the third attempt is unsuccessful, the Clinical Director, Clinical

Coordinator, or Charge Nurse is to be notified and a physician is to be called. These protocols are

based on national nursing standards.

In a June 22, 1992 performance evaluation, Mabesoone informed Chieppa that she

needed to improve her interpersonal skills. More specifically, Mabesoone stated that Chieppa

needed to be less critical of other coworkers over whom she held no supervisory role. Chieppa's

performance appraisal for the period from June 1996 to June 1997 noted a need for her to

improve on working with others, particularly thinking before making inappropriate remarks to

staff and patients.

In June 1998, Chieppa received an Employee Discipline Notice for failing to follow

Backus protocol and federal safety laws when she did not use protective gloves in completing an

emergency IV insertion on a trauma patient. The Notice included a statement that additional

---

[3]Venipuncture is "the puncture of a vein for surgical or therapeutic purposes or for collecting blood specimens for analysis." www.dictionary.com/browse/venipuncture (last visited September 8, 2016).

violations or misconduct might subject her to further disciplinary action, up to and including termination.

Chieppa's performance evaluation for the period from June 1997 to June 1998 noted her need to improve on her interpersonal skills. In her 2002 performance evaluation, Chieppa defended her performance by offering her opinion that a particular physician, Dr. Slater, was not properly doing his job. Chieppa's March 2010 performance evaluation noted her ongoing communication problems, and, in particular, her unwillingness to listen to both sides. Backus management attempted to provide her with positive encouragement to work on her interpersonal skills. Chieppa responded to this constructive criticism with the comment, "This is the kettle calling the pot black!" (Doc. # 27-2, at 139).

On October 28, 2010, Mabesoone and a representative from Human Resources met with Chieppa to discuss, in part, Backus's concerns about Chieppa's interpersonal skills. At that meeting, Chieppa was provided with a copy of the Code of Conduct. A performance evaluation dated February 22, 2011, noted that Chieppa needed to improve on listening to the opinions of others and showing respect to other employees. With regard to her interactions with other employees, the evaluation stated that, "You always seem to want them to change to your way of thinking, that is not always what needs to be done." (*Id.* at 142).

In July 2011, Chieppa received an Employee Discipline Notice stating that, "You have violated the Code of Conduct Policy (Attached) by sending the entire IV Team an inappropriate email regarding your frustration over a co-worker's personal situation. In addition, you commented on and documented your co-worker's absent days since 2010." (*Id.* at 146). Chieppa had no supervisory responsibility concerning this coworker. This Notice included the following

-5-

statement: "If further violations or misconduct occurs, you will be subject to further disciplinary action, up to and including termination." (*Id.*).

By way of a letter dated September 12, 2011, Backus notified Chieppa that she had failed to complete her annual in-service requirement through Backus's electronic learning system by the due date of August 30, 2011. The letter noted that "this requirement is mandated of us by state, federal and regulatory oversight agencies" and that if she did not complete her in-service requirement by September 30, 2011, her "employment with the hospital will be terminated." (*Id.* at 147). Chieppa's response to her failure to complete her required in-service by the due date was that she is a self-described procrastinator.

A November 2011 performance evaluation noted Chieppa's failure to: complete job tasks, complete continuing education requirements, properly document IV therapy treatments, and read work-related emails before deleting them. One of the evaluator comments to Chieppa stated that, "[Y]ou need to treat everyone with respect. You need to listen to others view points and if you disagree with the issue, it should be discussed in a professional manner." (*Id.* at 150). Chieppa was further instructed on the need to improve her interpersonal skills and follow Backus policies and guidelines.

Backus has a patient safety policy that chemotherapy orders submitted after 5:00 p.m. cannot be filled that day. Sometime after 5:00 p.m. on February 1, 2012, a Backus cancer patient who was awaiting chemotherapy treatment had questions about why the chemotherapy order would not be filled that evening. The Backus on-duty pharmacist visited the patient that evening and explained the patient safety reasons for the policy of not starting chemotherapy after 5:00 p.m. Additionally, the chemotherapy orders were incomplete, so it was not possible to administer

the chemotherapy at that time.

Despite knowing that Backus has a policy against administering chemotherapy past 5:00 p.m., and without having reviewed the entire file to determine the completeness of the chemotherapy orders, Chieppa began yelling about the Backus policy in front of the patient, a visitor, and the patient's roommate, calling the situation "ridiculous." (*Id.* at 56, p. 118:8-11). Upon seeing the pharmacist enter the patient's room, Chieppa said "report me, I don't care . . . ." (*Id.* at 56, p. 118:9-10). At her deposition, Chieppa characterized her behavior on this occasion as "rather unprofessional." (*Id.* at 53, p. 115:7).

On February 14, 2012, Chieppa received an Employee Discipline Notice, designated as a "Last Chance Warning." (*Id.* at 156). That Notice referred to previous admonishments to Chieppa and stated further that, "Your behavior on 2/1/12 was unacceptable and violated the Code of Conduct by creating an environment that was unprofessional and uncomfortable for the patient and the other people that witness[ed] your outburst. . . . [A]s a result of your inappropriate behavior, you are receiving this Last Chance Agreement. You are being issued a five (5) day unpaid suspension . . . . *Any* future incident of disruptive behavior will result in immediate termination of your employment." (*Id.*). At her deposition, Chieppa agreed that the Last Chance Warning issued to her was "rightly deserved." (*Id.* at 58, p. 120:8-10).

On August 15, 2012, a Backus patient complained that Chieppa made him feel as if it were a bother for her to take his IV out. On August 30, 2012, Chieppa left patient laboratory labels containing patient information stuck to the patient's door in violation of a Backus confidentiality policy. On September 7, 2012, Chieppa refused to attempt to insert an NG [nasal gastric] tube without the patient first being sedated. According to Chieppa, the patient appeared

"highly agitated." (*Id*. at 63, p. 125:13). Another RN successfully inserted the NG tube without sedation. Also in September 2012, a new nurse resident requested assistance from Chieppa in restarting an IV. Chieppa responded by asking, "[A]re you crazy?" (*Id.* at 64, p. 126:15-16).

On December 5, 2012, Backus management sent an email to Backus staff, including Chieppa, informing them that no medications, including the anticoagulant Heparin, were to be carried in IV baskets[4]. At a later date in December 2012, Heparin was found in Chieppa's basket contrary to Backus policy. Backus also has a policy requiring confirmation that a patient has a valid consent form in the patient's chart before a blood transfusion is started. In December 2012 Chieppa failed to confirm that a patient's blood transfusion consent form was in the patient's chart. On December 26, 2012, Atwater relayed a physician's order for Chieppa to follow. Chieppa disagreed with the procedure ordered and expressed her disagreement to her supervisor.

On December 27, 2012, Chieppa was called to a patient's room to restart an IV. Her first attempt at venipuncture failed and she left the patient, who was experiencing a significant blood pressure drop and needed fluids immediately. Chieppa then approached Dr. Dhami, who had ordered the IV treatment, and told him that, in her opinion, the patient would have benefited from the use of a Tri-Flow[5], which would have required the prior approval of another physician, the nephrologist[6], before the current situation arose. The use of a Tri-Flow also involves greater risks of dislodgement, bleeding, and infection. According to Chieppa, Dr. Dhami responded to her

---

[4]Chieppa testified at her deposition that her "basket" was what she "use[d] to hold equipment in order to start IV's." (Doc. # 27-2, at 71, p. 133:11-12).

[5]According to Chieppa, "[a] Tri-Flow is a dialysis catheter that has an additional line used for IV fluids." (Doc. # 27-2, at 78, p. 140:22-23).

[6]Nephrology is "the branch of medical science that deals with the kidney." www.dictionary.com/browse/nephrology (last visited September 8, 2016).

statement by saying, "[T]hat is the stupidest statement I've ever heard." (*Id.* at 77, p. 139:18-19). Chieppa then walked away from Dr. Dhami and approached the charge nurse. She asked the charge nurse to inquire of Dr. Dhami whether the dialysis catheter could be used for the patient and also to call a second IV therapist. Chieppa then left the floor on which that patient was located. The charge nurse called a second IV therapy RN who successfully restarted the patient's IV.

Chieppa received her annual performance review on January 7, 2013. This review noted her noncompliance with continuing education requirements and certain Hospital IV therapy policies. The review also noted that Chieppa refused to speak with coworkers when she did not wish to do so and played games on the office computer when she was supposed to be working. Backus blocked Chieppa's online access to prevent her from playing games, but as soon as she regained online access she went back to playing games online. After the December 27, 2012 incident involving Chieppa, Backus management, in conjunction with Human Resources, investigated performance issues pertaining to Chieppa. On January 14, 2013, several Backus representatives, including Bazinet, met with Chieppa and her union representative and discussed various incidents involving Chieppa that had occurred after she received her Last Chance Warning. At this meeting Chieppa was afforded the opportunity to respond to each incident that was discussed. On January 24, 2013, Chieppa's employment with Backus was terminated for the stated reason of misconduct.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute."  *American  International Group, Inc. v. London American International Corp.*, 664 F.2d 348, 351 (2d Cir.1981) (internal quotation marks omitted).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute concerning a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party "must present specific evidence demonstrating a genuine dispute." *Gannon v. UPS*, 529 F. App'x 102, 103 (2d Cir. 2013). The Court must view all inferences and ambiguities in a light most favorable to the nonmoving party.  *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

The Second Circuit has "repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent . . . .  Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008) (citations omitted).  The nonmoving party must

"'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324). "[T]he standard for determining whether the evidence [is] sufficient to sustain the submission of plaintiff's case to the jury [is] simply whether on the basis of that evidence, a factfinder could reasonably find the essential elements of a case of discrimination . . . .  [E]mployers should not be held liable for discrimination in the absence of evidence supporting a reasonable finding of discrimination." *James v. New York Racing Association*, 233 F.3d 149, 154-55 (2d Cir. 2000).

## III.  DISCUSSION

### A. ADEA

The ADEA's purpose is "to promote employment of older persons based on their ability rather than age [and] to prohibit arbitrary age discrimination in employment . . . ." 29 U.S.C. §621(b). Pursuant to the ADEA "[i]t shall be unlawful for an employer . . . to discharge any individual . . . because of such individual's age . . . ." 29 U.S.C. §623(a). The ADEA's prohibition against age discrimination protects "individuals who are at least 40 years of age." 29 U.S.C. §631(a).

"Claims brought pursuant to the ADEA are analyzed under the *McDonnell Douglas* . . . tripartite burden-shifting framework." *Timbie v. Eli Lilly & Co.*, 429 F. App'x 20, 21-22 (2d Cir. 2011) (citation omitted). "In a nutshell, a plaintiff first bears the minimal burden of setting out a prima facie discrimination case, and is then aided by a presumption of discrimination unless the defendant proffers a legitimate, nondiscriminatory reason for the adverse employment action, in which event, the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination." *McPherson v. N.Y. City Dept. of Education*,

457 F.3d 211, 215 (2d Cir. 2006) (internal quotation marks omitted). In the context of an ADEA

claim, once the defendant articulates a legitimate, nondiscriminatory reason for the adverse

employment action, "the plaintiff must show that a reasonable jury could conclude by a

preponderance of the evidence that the plaintiff's age was a 'but for' cause of the adverse

employment action." *Timbie*, 429 F. App'x at 22 (internal quotation marks and alterations

omitted).

    i. Prima Facie Case

    "In order to establish a prima facie case of age discrimination, [Chieppa] must show (1)

that she was within the protected age group, (2) that she was qualified for the position, (3) that

she experienced adverse employment action, and (4) that such action occurred under

circumstances giving rise to an inference of discrimination." *Gorzynski v. JetBlue Airways Corp.*,

596 F.3d 93, 107 (2d Cir. 2010). There is no doubt that Chieppa satisfies the first three elements

of the prima facie case: she was over forty years of age, was qualified for her position of IV

therapy RN, and was terminated from her position. While it is questionable whether Chieppa's

termination occurred under circumstances giving rise to an inference of discrimination, the Court

recognizes that a plaintiff's burden in establishing a prima facie case of discrimination is "de

minimis"; *Timbie*, 429 F. App'x at 22; and will assume for purposes of ruling on the defendant's

motion that Chieppa has established a prima facie case of age discrimination.

    ii. Legitimate, Nondiscriminatory Reason

    The second step under *McDonnell Douglas* is the articulation of a legitimate,

nondiscriminatory reason for the adverse employment action by the defendant. The reason stated

by Backus for terminating Chieppa was misconduct.  "[A]ny legitimate, non-discriminatory

reason will rebut the presumption triggered by the prima facie case." *Johnson v. Conn. Dept. of Admin. Servs.*, 972 F. Supp. 2d 223, 252 (D. Conn. 2013) (internal quotation marks omitted). Since Backus has articulated a legitimate, nondiscriminatory reason for terminating Chieppa, it has rebutted the presumption arising out of the prima facie case.

    iii. Pretext

    Since the defendant has met its burden under the second step of the *McDonnell Douglas* analysis, "the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture, and the burden shifts back to the plaintiff to come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." *Ben-Levy v. Bloomberg, L.P.*, 518 F. App'x 17, 19 (2d Cir. 2013) (internal quotation marks omitted).  Ultimately, Chieppa must prove "that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Financial Services, Inc.*,  557 U.S. 167, 180 (2009). "The condition that a plaintiff's age must be the 'but for' cause of the adverse employment action is not equivalent to a requirement that age was the employer's only consideration, but rather that the adverse employment action would not have occurred without it." *Delaney v. Bank of America Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) (internal quotation marks and alterations omitted).

    The question before the Court, then,  is "whether the evidence, viewed in the light most favorable to the plaintiff, would permit a jury to find . . . that age was the 'but-for' cause of the challenged adverse employment action." *Id.* at 168 (internal quotation marks omitted). The

entirety of Chieppa's argument that she produced sufficient evidence to establish that the non-

discriminatory reason articulated by the defendant was a pretext for discrimination is as follows:

> The timeline of events is critically important to Plaintiff's claims.
> Plaintiff had received overall satisfactory annual performance
> reviews for many years until Lisa Bazinet became her supervisor
> in early 2012. Plaintiff was unfairly criticized by Lisa Bazinet
> for numerous incidents during 2012. Plaintiff was terminated less
> than one (1) year after Bazinet became her supervisor.
> A jury could reasonably find that the constant criticisms of
> Plaintiff's performance during 2012 was not justified, not credible,
> based in part on her age . . . and that, therefore, Defendant was
> not justified in terminating Plaintiff.

(Doc. # 31, at 10).

"'The *sine qua non* of a . . . discriminatory action claim under . . . the ADEA is that the

discrimination must be *because of* a protected characteristic [i.e., age].'" *Das v. Reade*, 14-CV-

1717 (SJF) (WDW), 14-CV-2059 (SJF) (WDW), 2014 U.S. Dist. LEXIS 65185, at *9

(E.D.N.Y. May 8, 2014) (quoting *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)). Chieppa's

contention that she was subjected to unfair criticism by her new supervisor would not, in and of

itself, support a finding by a reasonable jury that age was the "but for" cause of her termination.

Totally apart from the question of whether Chieppa's unfair criticism argument is supported by

the evidence, there is no evidence that would link the criticism to her age.

At her deposition, Chieppa was asked about the basis of her age discrimination claim:

> Q    Okay. So the basis for the [age discrimination] claim is you had
>      been there a long time, you were making good money because you
>      had been there a long time, you were close to retirement, so you
>      assumed Lisa [Bazinet] wanted you out?
> A    At wasn't an assumption. It was a feeling. . . .
> Q    But can you tell me any facts or examples of Lisa doing
>      something that made you feel that way?
> A    Yes. When she approached and asked me if I was scared.
> Q    That one incident that you talked about before?

-14-

> A      Yeah
> Q      Anything else?
> A      She ignored e-mails when I asked her for help.
> Q      When?
> A      During the year of 2012.
> Q      Do you have those e-mails?
> A      I do.
> Q      Could you please produce those? There are several items that
>          we asked for that those were not produced.[7]

(Doc. # 27-2, at 102, p. 180:5-25 and at 103, p. 181:1-3). At a previous point in her deposition,

Chieppa testified that on one occasion when she was standing at the door to the office, Bazinet

walked up to her, made eye contact and stated, "Scared?" (*Id.* at 95, p. 166:17-19). Chieppa

responded by asking, "Of what?" (*Id.* at 95, p. 166: 20). Bazinet did not answer Chieppa and

instead continued into the office.

"Even in the discrimination context . . . a plaintiff must provide more than conclusory

allegations to resist a motion for summary judgment." *Delaney*, 766 F.3d at 170 (internal

quotation marks omitted). Chieppa's assertion that Bazinet wanted her out because of her age

does not rise above the level of a conclusory allegation. Chieppa also testified at her deposition

that she believed other former Backus nurses had been forced out of their positions on the basis

of their age. When asked for the basis of her belief that other nurses had been forced out because

of their age, Chieppa responded that former Backus nurses had told other individuals, who then

told Chieppa, that they had been forced out of Backus. "[T]his evidence is inadmissible on

hearsay grounds . . . . Materials submitted in support of or in opposition to a motion for summary

judgment must be admissible themselves or must contain evidence that will be presented in

admissible form at trial." *Id.* at 169-70 (internal quotation marks omitted).

---

[7]No such emails are included in the record before the Court.

What the admissible evidence submitted in connection with the motion for summary judgment does demonstrate is that prior to the time of her termination, Chieppa had been advised on a number of occasions that she needed to improve her interpersonal skills. She had also been the subject of disciplinary actions for failing to follow Backus policies and protocols. On one occasion Chieppa began yelling about a Backus policy in front of patients and a visitor, calling the situation "ridiculous." (Doc. # 27-2, at 56, p. 118:8-11). At her deposition, Chieppa characterized her behavior on this occasion as "rather unprofessional." (*Id.* at 53, p. 115:7).  In February 2012 Chieppa received a Last Chance Warning, which she agreed was "rightly deserved." (*Id.* at 58, p. 120:8-10). Chieppa also acknowledged at her deposition that she had on occasion disregarded a Backus policy or questioned the performance or practices of Backus physicians.

The Court finds that Chieppa has failed to carry her burden as to the third step of the *McDonnell Douglas* analysis. She has not produced evidence that would support a finding that the reason given by Backus for her termination, misconduct, was a pretext of any sort, much less a pretext for age discrimination. *See Piela v. Connecticut Department of Correction*, No. 3:10cv749 (MRK), 2012 U.S. Dist. LEXIS 59148, at *20 (D. Conn. April 26, 2012) ("Evidence of pretext alone will not be sufficient; the plaintiff must show that the employer's explanation is mere pretext for an impermissible discriminatory motive."). Since Chieppa failed to carry her ultimate burden under *McDonnell Douglas*, Backus is entitled to summary judgment as to her age discrimination claim.

B. Title VII

Chieppa has also raised claims pursuant to Title VII, alleging discrimination based on her

-16-

race, color, and sex. "An employment decision . . . violates Title VII when it is based in whole or in part on discrimination [because of race, color, or sex]." *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008) (internal quotation marks omitted). As was the case with Chieppa's ADEA claim, her Title VII claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *See id.* at 138.

As it did with Chieppa's ADEA claim, the Court will assume for purposes of ruling on the defendant's motion that Chieppa established a prima facie case of discrimination based on race, color, and sex. As previously noted, the legitimate, nondiscriminatory reason for termination articulated by Backus is misconduct. The remaining question under the *McDonnell Douglas* analysis is whether Chieppa has produced sufficient evidence to support a finding "that the employer's proffered reason was a pretext for discrimination [based on race, color, or sex]." *McPherson v. N.Y. City Dept. of Education*, 457 F.3d 211, 215 (2d Cir. 2006).

In responding to the defendant's motion for summary judgment, Chieppa argues, in the context of establishing a prima facie case, that "an inference of discriminatory intent may be derived from a variety of circumstances including where the plaintiff can show that the defendant treated her less favorably than similarly situated employees outside of the protected class." (Doc. # 31, at 8). Chieppa is a white woman. She has produced no evidence that would permit a reasonable jury to find that she was treated less favorably than similarly situated male or non-white employees.

Chieppa's argument as to pretext regarding her Title VII claims is the same one she made regarding her ADEA claim, i.e., that she had received overall satisfactory performance reviews until Bazinet became her supervisor in early 2012, that she was "unfairly criticized by Lisa

-17-

Bazinet for numerous incidents during 2012 . . . [and] was terminated less than one (1) year after Bazinet became her supervisor." (*Id.* at 10). As was the case with her ADEA claim, Chieppa fails to establish any link between actions taken by Bazinet and discrimination based on race, color, or sex.

While Chieppa testified at her deposition that she had a feeling Bazinet wanted her out of Backus because of her age, she did not testify that she believed Bazinet wanted to force her out of Backus because of her race, color, or sex. When asked to name everyone at Backus who had discriminated against her based on her color or race, Chieppa named Dr. Dhami.[8] She stated that Dr. Dhami discriminated against her by "[n]ot listening to my expertise concerning his patient" on December 27, 2012, and on another occasion when "he went into the room and attempted an IV start." (Doc. # 27-2, at 109, p. 200:3-11). Chieppa also indicated that she never heard Dr. Dhami make reference to her color or race, or make a racial slur or joke.

When asked to name everyone at Backus who had discriminated against her based on her sex, Chieppa again named Dr. Dhami. The basis of her claim that Dr. Dhami discriminated against her because of her sex was that "[h]e didn't take what I had to say seriously. He . . . brushed me off and made the inference that I was stupid." (Id. at 106, p. 197:15-17). She went on to say that on one occasion when she was unable to get an IV line in a patient who was directly across the hall from Dr. Dhami, "he took my box with my IV equipment in it and went into the room and made an attempt to start an IV." (*Id.* at 106, p. 197:24-25 and at 107, p. 198:1-2).

---

[8]Chieppa testified further that another physician, who was "also of Indian descent" and whose name she could not remember, had also discriminated against her. (Doc. # 27-2, at 108, p. 199:25 and at 109, p. 200:1-2). She did not indicate in what way this unnamed physician had discriminated against her.

According to Chieppa, this action demonstrated that "[h]e didn't take what I had to say as meaningful." (*Id.* at 107, p. 198:3-4). Chieppa acknowledged that Dr. Dhami did not make any comments to her about her sex, and she could not recall him ever making an inappropriate joke of a sexual nature.

Chieppa's deposition testimony might provide support for a claim that Dr. Dhami exhibited a brusque manner in his dealings with her and that she found this treatment offensive. That testimony does not, however, constitute sufficient evidence to support a finding "that the employer's proffered reason was a pretext for discrimination [based on race, color, or sex]." *McPherson v. N.Y. City Dept. of Education*, 457 F.3d 211, 215 (2d Cir. 2006). "Title VII is not 'a general civility code.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 75 (2d Cir. 2001) (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998)). "'[I]f the workplace is unsavory for any reason other than hostility generated on the basis of race, gender, [or] ethnicity, . . . no federal claim is implicated. In short, personality conflicts between employees are not the business of the federal courts.'" *Labonia v. Doran Associates, LLC*, No. 3:01CV2399 (MRK), 2004 U.S. Dist. LEXIS 17025, at *25 (D. Conn. Aug. 25, 2004) (quoting *Vore v. Indiana Bell Telephone Co.*, Inc., 32 F.3d 1161, 1162 (7th Cir. 1994)). At most, Chieppa's testimony indicates a personality conflict between employees.

When asked at her deposition if she knew whether Dr. Dhami treated male nurses differently, Chieppa responded, "Not to my knowledge." (Doc. # 27-2, at 108, p. 199:1-3). She then acknowledged it was possible that Dr. Dhami "treated everybody" the way he treated her. (*Id.* at 108, p. 199:4-6). "Bad behavior that is sex-neutral on its face, or directed at both men and women alike cannot, without a showing of discriminatory intent, support a Title VII

discrimination claim." *Labonia*, 2004 U.S. Dist. LEXIS 17025, at *22.   Chieppa also testified at her deposition that Dr. Dhami was not involved in the decision to terminate her employment at Backus. This fact undermines Chieppa's effort to establish a link between her termination and discrimination based on race, color, or sex. *See Wright v. City of Ithaca*, 5:12-cv-378 (GLS/TWD), 2015 U.S. Dist. LEXIS 34791, at *16 (N.D.N.Y. March 20, 2015) (internal quotation marks and alterations omitted) ("statements made or actions taken by nondecisionmakers, or actions unrelated to the decisionmaking process, cannot be used to support an allegation of pretext").

 "[A] plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). Chieppa has not provided the Court with anything more than conclusory allegations of discrimination based on her race, color, or sex. Consequently, Backus is entitled to summary judgment as to her Title VII claims.

## IV.  CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment (**doc. # 24**) is **GRANTED**.

Judgment shall enter in favor of the defendant William W. Backus Hospital and the Clerk is directed to close the case.

SO ORDERED this 8th day of   September,  2016.

/s/ DJS
_____
Dominic J. Squatrito
United States District Judge

-20-